*770 OPINION.
Black :
The principal question in this proceeding is whether petitioner filed a false or fraudulent return for 1928 with intent to evade tax. If this question is decided in petitioner’s favor, we need go no further as any deficiency that might be due would be barred by the statute of limitations for the reason that the exceptions to the statute provided for in section 276 of the Revenue Act of 1928 would not be applicable and the deficiency notice was not mailed to petitioner within the two-year period of limitations provided for in section 275 (a) of the same act.
Congress has provided (sec. 601, Revenue Act of 1928) that “in any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax * * * the burden of proof in respect of such issue shall be upon the Commissioner.” In Duffin v. Lucas, 55 Fed. (2d) 786, the Circuit Court of Appeals for the Sixth Circuit said that “* * * it is a fundamental rule of judicial procedure that fraud can not be lightly inferred but must be established by clear and convincing proof.” In Henry S. Kerbaugh, 29 B. T. A. 1014; aff'd., 74 Fed. (2d) 749, the Board said:
* * * A charge of fraud has always been regarded as a serious matter in the law. Not only is it never presumed, but the ordinary preponderance of evidence is not sufficient to establish such a charge. It must be proved by clear and convincing evidence. George L. Rickard, 15 B. T. A. 316; M. Rea Gano, 19 B. T. A. 518; Budd v. Commissioner, supra.
*771 The respondent contends (1) that the entire amount of $225,547.13 awarded to petitioner by the arbitration award was income to petitioner in 1928, $85,000 being actually received and $140,547.13 being constructively received; (2) that petitioner knew that his tax would be greater, due to the surtax brackets, if the full fee were reported in one year than if it were divided between two years, and, knowing this, caused Van Iderstine to delay paying him the full $225,547.13 during 1928; and, (3) that in any event, petitioner’s failure to report as income in any year the amount of $50,295.23 invested in Treasury certificates is sufficient evidence to justify a finding of fraud.
We think that, notwithstanding the $50,295.23 item was denominated in the award as a reimbursement to petitioner for capital expenditures, it should have been included in petitioner’s gross income for either 1928 or 1929. This case, in some of its features, is like that of Sara R. Preston, 35 B. T. A. 312. Whether the $50,295.23 item should have been included in income for 1928 as the Commissioner contends, or in 1929 when petitioner actually received the Treasury certificates into which the $50,000 fund had been converted, we need not decide. We do not have the year 1929 before us in this proceeding and therefore have no jurisdiction as to that year, and w'e are not called upon to decide that it should be included in 1928 income unless we hold that petitioner’s income tax return for 1928 was false or fraudulent with intent to evade tax. If it was not, then the statute of limitations has barred any deficiency. The arbitration award specifically stated that “The amount of said reimbursement is fixed at $50,000 and said Bonynge & Barker are to pay to said Barnes-as a reimbursement to his expenditure said amount and without claiming said amount, so paid, as a deduction on account of income tax, either Federal or State.” We do not think such a statement as above quoted would make the $50,000 item income to Bonynge & Barker (because they never received it); neither do we think it would relieve petitioner from including such a payment in gross income when he received it. We would so hold if we reached that question for decision.
But notwithstanding we would so hold, we can not hold that its omission from income in 1928 establishes that petitioner filed a false and fraudulent return for that year with intent to evade tax. Even if we assume, as the Commissioner contends, that petitioner constructively received the bonds in 1928 and should have included them in his gross income for that year, we can not hold that his failure to include them was due to a fraudulent intent.
Petitioner seems to have believed in good faith that, because of the recitations in the arbitration award, this $50,000 in question would be returned as income by Bonynge & Barker; that they and *772 not he would have to return it and pay tax on it. Petitioner testified that he did not know until 1934 that Bonynge and Barker had not returned the $50,000 in question as a part of their income. In this state of facts we can not find that petitioner’s omission of this $50,000 item from his income tax return for 1928 was due to fraud with intent to evade the tax.
As to the item of $90,251.90, we think there is still less ground for holding that it was fraudulently omitted from petitioner’s income tax return for 1928. Cf. Sara R. Preston, supra. This item was not actually received in cash by petitioner until 1929 and, only by holding that it was withheld by Van Iderstine at the connivance of petitioner, as respondent alleges, could we hold that it was income to petitioner and was knowingly omitted from his income tax return for 1928 in order to lessen his income tax for that year.
Van Iderstine was dead at the time of the hearing and did not testify.
There is no evidence whatever that petitioner caused Van Iderstine to delay turning over to him any portion of the Monell fee. In fact, the evidence that was introduced shows that the opposite was true. Petitioner appears to have made every effort within reason to obtain his share of the fee as soon as possible. Petitioner was put on the witness stand by the respondent and testified that from October 29, 1928, until he had actually received his entire fee he continually endeavored to settle with Van Iderstine; that Van Iderstine “always had a reason” why he would not settle but “would not give it to me”; that at no time had he ever asked Van Iderstine not to pay him until after the first of January; that when he filed his return for 1928 he did not know what his income would be for 1929; that the delay in payment was not in any way brought about by himself; that up until January 8, 1929, he did not believe he could get the Treasury certificates simply by calling for them; that when he asked . Van Iderstine to “settle” with him, he considered that an indirect request for the delivery of the certificates as well as the balance of the cash; that he knew very little about income taxation; that he never considered himself fit for that type of work as he had no accounting mind; and that he never took an income tax case in his life.
After a careful consideration of all of the evidence, we hold that the respondent has not sustained his burden of showing fraud.
For us to hold that petitioner’s income tax return for 1928 was filed falsely or fraudulently with intent to evade tax would have to be based too much on inference. We would have to infer that Van Iderstine, if he were living, would testify in a way which would support respondent’s theory of the case. This we may not do.
*773 It is therefore our opinion, and we have so found in our findings of fact, that petitioner did not file a false or fraudulent return for 1928 with intent to evade tax. This finding makes it unnecessary for us to decide whether any part of the $140,547.13 was constructively received by petitioner during the taxable year 1928, for the reason that any deficiency that might be due would be barred by the statute of limitations. Sec. 276 (a), Revenue Act of 1928.
Reviewed by the Board.

Decision will be entered for the petitioner.